## Commonwealth on Relation v. Yungblut, Judge.

(Decided May 19, 1914.)

### Petition for Writ of Prohibition.

1. Prohibition—Writ of—When This Court Will Issue.—A writ of prohibition will be issued by this court against the judge of a circuit court to restrain him from hearing or determining a case outside of the jurisdiction of his court.

2. Appeal—In Criminal Cases—May or May Not Be Granted by the Legislature.—The Legislature, in creating an offense and in prescribing the punishment therefor, has full authority to say what court shall have jurisdiction to hear the case and give judgment therein, and may or may not, in its discretion, grant an appeal from the judgment of the court that is given jurisdiction to hear the case.

3. Statutes—Construction of—Exclusive Jurisdiction.—An Act, intended to prevent children from becoming dependent, neglected or delinquent, conferred on county courts the jurisdiction of all cases arising under the Act and provided that this court should have "exclusive jurisdiction" of such matter:  Held,  that the words "exclusive jurisdiction" meant not only exclusive but full and final jurisdiction, and that no appeal lies from the judgment of the county court, although it may have imposed a fine and imprisonment.

4. Statutes—Construction of—Intent of the Legislature.—In the construction of all Acts the courts endeavor to arrive at the intention of the Legislature, and, with a view of giving to the Act the legislative intent, the same words and phrases are often given different meanings in different Acts.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General, and BLAINE McLAUGHLIN for petitioner.

R. W. NELSON for respondent.

OPINION OF THE COURT BY JUDGE CARROLL—Granting writ of prohibition.

This is an application by the Commonwealth on the relation of the Attorney General for a writ of prohibition against the Hon. Charles W. Yungblut, Judge of the Seventeenth Judicial District.

It appears from the petition that one Chris Whitehead was cited to appear before the judge of the Campbell County Court to answer the charge of contributing to the delinquency of Millie Baier, a female under 18 years of age. When the case came on for trial before the judge of the county court, Whitehead pleaded not guilty, but on a trial was found guilty of the offense charged and was adjudged to pay a fine of one hundred dollars and sentenced to imprisonment in the county jail for a period of fifty days.

On the same day that the judgment was rendered, Whitehead prosecuted an appeal to the circuit court of Campbell County and executed a supersedeas bond before the clerk of the circuit court, in the manner and form provided in section 365 of the Criminal Code when an appeal is taken from the judgment of an inferior court in a misdemeanor case to the circuit court. When the record of the proceedings in the county court was filed in the circuit court the clerk thereof issued a certificate as provided in section 364 directing the judge of the county court to suspend proceedings upon the judgment rendered in his court, and thereupon, as provided in section 365 of the Code, the judgment of the county court stood suspended. The effect of the appeal, supersedeas bond and certificate of suspension being to transfer the case as an original case to the circuit court for trial, as it is provided in section 366 of the Code that "Upon the appeal the case shall be tried anew, as if no judgment had been rendered."

Thereafter the Commonwealth moved Judge Yung-blut in the circuit court to dismiss the appeal for want of jurisdiction upon the part of the circuit court to enter-tain the appeal, which motion was overruled.

It further appears from the petition filed in this court that Judge Yungblut is threatening to and will take jurisdiction of the case and will hear and determine it as an ordinary criminal case pending on appeal unless prohibited from doing so by this court.

On this application it is the contention of the Com-monwealth that the circuit court of Campbell County has no jurisdiction of an appeal from the county court in a case like this, and therefore the judge of the circuit court, in entertaining jurisdiction of the appeal and in declaring his purpose to hear and determine the case on the appeal, was acting outside the jurisdiction of the court over which he presides.

If the Campbell Circuit Court did not have jurisdic-tion to entertain the appeal, then this court may issue its writ of prohibition against the judge of the court to restrain him from hearing and determining the appeal: Rush v. Denhardt, 138 Ky., 238; Jenkins v. Berry, 119 Ky., 350.

It will thus be seen that the single question presented is, does an appeal lie to the circuit court from a judg ment of the county court in cases like this? The right of appeal in this class of cases is purely a statutory right. It is not a right guaranteed to either the Com-monwealth or the accused by the Constitution. The Leg-islature, in creating an offense, and in prescribing the punishment therefor, and how the offender shall be tried, has full authority to say what court shall have jurisdic-tion to hear the case and give judgment therein and may or may not, in its discretion, grant an appeal from the judgment of the court that is given jurisdiction to hear the case. Re Sharp, 15 Idaho, 120, 18 L. R. A. (n. s.), 886; Saylor v. Dual, 236 Ill., 429, 19 L. R. A. (n. s.), 377; Sulli-van v. Haug, 82 Mich., 548; 10 L. R. A., 263; Chattanooga v. Keith, 115 Tenn., 588, 5 Ann. Cases, 859; Miller v. Com-monwealth, 127 Ky., 387; Carey v. Sampson, 150 Ky., 460. So that we must look to the act creating and de-scribing this offense for the purpose of determining whether or not an appeal lies in this class of cases.

Two views of this question are presented. Counsel for the respondent say that the case comes within the

meaning of section 362 of the Criminal Code in which
it is provided that "If a judgment against a defendant
on a trial before a county judge, or in a justice's court,
or in a city or police court, unless otherwise provided in
the statutes creating or regulating it, be for imprison-
ment or for a fine of twenty dollars or more, he shall
have the right of appeal to the circuit court of the
county in which the judgment is rendered," and there-
fore as the judgment of the county court imposed a fine
of one hundred dollars and a jail sentence of fifty days,
the defendant had the right to appeal to the circuit
court. While counsel for the petitioner urge that the
Act under which the proceedings were had in the county
court confers upon the county court final and exclusive
jurisdiction to hear and determine the case, and it does
not come within the scope of the section of the Code.

The proceeding in the county court was had under an
Act that became a law in March, 1910, providing for the
punishment of persons responsible for or contributing
to conditions that would render a child dependent, neg-
lected or delinquent. Section one of this Act provides,
in substance, that a parent or guardian or person having
the custody of any dependent, neglected or delinquent
child, or any other person who shall knowingly and wil-
fully encourage, aid, cause, abet or connive at such State
of dependency, neglect or delinquency, or shall know-
ingly or wilfully do any act or acts that directly produce
or contribute to the conditions which render such child
a dependent, neglected or delinquent child, shall be
deemed guilty of a misdemeanor and, on conviction
thereof, shall be punished by a fine of not more than one
hundred dollars, or by imprisonment in the county jail
or workhouse for not more than fifty days, or both by
such fine and imprisonment; and further provides,
"that, instead of imposing the punishment hereinbefore
provided, the court shall have the power to enter an
order suspending sentence and releasing the defendant
from custody or probation, for the space of one year,
upon his or her entering into a recognizance, with or
without sureties, in such sums as the court may direct.
The condition of the recognizance shall be such that if
the defendant shall make his or her personal appear-
ance in court whenever ordered to do so within a year,
and shall provide and care for such dependent, neglected
or delinquent child in such manner as to prevent a con-

tinuance or repetition of such state of dependency, neglect or delinquency or as otherwise may be directed by the court, and shall further comply with the terms of such order, then the recognizance shall be void, otherwise it shall remain in full force and effect. If the court be satisfied by information or due proof, under oath, that at any time during the year the defendant has violated the terms of such order, it may forthwith revoke such order and sentence him or her under the original conviction. Unless so sentenced, the defendant shall, at the end of such year, be discharged and such conviction shall become void."

"Section two. In trials under this act, the person proceeded against shall have the right to a trial by jury which shall be granted as in other cases, unless waived. If the finding of the jury be against the person tried, their verdict shall so state, in which event the court, in its discretion, may enter such judgment as to it seems needful in the premises.

"Section three. The county courts of the several counties of the State shall have exclusive jurisdiction of all cases coming within the provisions of this act.

"Section four. This act shall be liberally construed in favor of the State for the purpose of the protection of the child from neglect, or omission of parental duty toward the child by its parents, and further to protect the child from the effects of the improper conduct for acts of any person which may cause, encourage or contribute to the dependency, neglect or delinquency of such child, although such person is in no way related to such child."

This Act is one of a series of Acts passed by the Legislature in recent years for the purpose of protecting minor children who are dependent, neglected or delinquent, and for the further purpose of punishing any person who aids, causes or contributes to conditions that may or do render a child dependent, neglected or delinquent.

The Act was designed to give the county court of each county a general superintendency and control over dependent, neglected or delinquent children and persons who brought about or contributed to their dependency, neglect or delinquency, and to invest these courts with such power and authority as in the exercise of a reasonable discretion they might consider necessary and

proper to protect the child described and to punish the person who caused the conditions set forth in the Act. The Act is not purely a penal statute. It is more in the nature of a reformatory or corrective statute. The punishment of the offender by the infliction of a fine or a sentence of imprisonment is not the whole aim of the statute. Indeed the punishment that is authorized is only a minor means by which the wholesome purpose of the law may be made. effective. To save children from becoming outcasts, to protect them from neglect, to prevent them from becoming a charge on the Commonwealth, and help them to be useful and worthy men and women, was the chief purpose of the Act.

In ordinary criminal cases the statute creating the offense prescribes the penalty that shall be visited on the offender, and in this class of cases, when there has been a trial and judgment and the penalty provided for has been imposed, the court rendering the judgment has no power to suspend it and no discretion to exercise in the execution of it. The defendant must either satisfy the judgment as it stands or prosecute an appeal to some other court, if an appeal is allowed.

It will be observed, however, that this Act clothes the county judge with large discretion not only in the imposition of the punishment authorized by the Act, but in respect to the execution of the judgment after it has been entered. When a person is proceeded against under this Act, it is provided that the court, after hearing the case, if a jury trial is waived, may refrain from imposing the punishment authorized by the Act and suspend the sentence and release the defendant from custody on probation upon his entering into a recognizance that he will do and perform the things specified in the recognizance and be obedient to the orders of the court during the time specified. It further provides that when there has been a trial by jury and a verdict of guilty, the court need not, as in other criminal cases, enter a judgment in conformity with the verdict, but may "enter such judgment as to it seems needful in the premises." Although the jury may find the defendant guilty and assess his punishment within the limits of the Act, the court may suspend the imposition of the sentence for the time and in the manner provided in section one of the Act, and may enter such judgment in its discretion as will accomplish the purpose of the Act.

It seems very clear from these provisions that to enable the county court to effectively carry out the purpose of the act, its jurisdiction must be exclusive, and this does not merely mean exclusive jurisdiction to· hear and determine the case in the first instance or that the power of the court is limited to original jurisdiction, but it means that the court shall have full, exclusive and final jurisdiction over the case in all of its aspects, so that the court may be in a position at all times to do, in the exercise of a sound discretion, and in the light of all the facts and circumstances developed on the hearing, whatever may seem best for the interest of the child and the reformation of the offender.

If it had been intended that the jurisdiction of the court should end with a trial and judgment and· that an appeal should be allowed as in other criminal cases, obviously there would have been no reason for inserting in the Act the provision giving to the court· the large discretionary power conferred, because if appeals were allowed under the provisions of the Code as in other cases, the court would have no jurisdiction over the person of the defendant and no authority to control or suspend the punishment imposed by the judgment, as when an appeal was taken all the power and authority over the case and the person of the accused would be transferred to the circuit court.

If the Legislature had intended that in this class of cases appeals might be prosecuted or that the judgment of the county court might be set aside or suspended by some other tribunal, or if it.had been the purpose to let this class of cases take the same course as other prosecutions for misdemeanors, it seems apparent that the Legislature would not have given to the county court the power to suspend or modify or remit the sentence that a jury might assess against the defendant.   To allow an appeal would take from the county court all control of the case and deprive it of the right to exercise a superintending and corrective control over the defendant, and limit its jurisdiction to the mere right to hear and determine the case.   The Act does not give to the circuit court any discretion, and in that court the case would necessarily be disposed of as are other penal prosecutions.

It therefore seems manifest that if the important parts of the Act, that give to the county judge the large

discretion allowed in suspending, controlling and reducing the judgment, are to have any meaning or effect, the county court must have not only exclusive but final jurisdiction, and we so construe the Act.

It is very true that this construction gives large power to the county court and the right to impose heavy penalties in this class of cases, but this is what we conceive the Legislature intended to do in the enactment of this law, and it is not to be presumed that the county courts will exercise in an unreasonable or arbitrary way the discretion conferred by the Act; but if they should the Legislature of the State and not this court must afford a remedy by appeal. McInteer v. Moss, 144 Ky., 667.

We have been cited by counsel for the respondent to several cases in which the words "exclusive jurisdiction" have been construed to mean "exclusive original jurisdiction," but this construction was adopted in construing acts very different from this one, and in an effort to arrive at the legislative intent. It is, too, a matter of common occurrence in the construction of laws to give to the same words or phrases a different meaning in different legislative Acts, the construction in each case having in view a desire to conform to the context and give expression to the legislative will. Hodge v. Bryan, 149 Ky., 110; Lanferman v. Vanzile, 150 Ky., 751; James v. U. S. Fidelity and Guaranty Co., 133 Ky., 299; Mechanics' Savings Bank v. Commonwealth, 128 Ky., 190; Commonwealth v. Herald Pub. Co., 128 Ky., 424; Katzman v. Commonwealth, 140 Ky., 124.

In Marlow v. Commonwealth, 142 Ky., 106, we had before us a question quite similar to the one we are now considering. In that case the construction of a certain section of an Act of 1908, now section 331e of the Kentucky Statutes, relating to dependent, neglected and delinquent children, was involved, and one of the questions was whether an appeal could be taken from the judgment of the county court declaring a minor child to be delinquent within the meaning of the Act and committing her to custody. The statute did not make any provision for an appeal, but it was insisted that in view of the importance of permitting the review of a judgment of an inferior court taking from a parent the custody of his child, an appeal should be allowed; but we said it was the purpose of the Legislature to leave the exclu-

sive control of matters like this in the hands of the county court, and that as the Legislature did not in express terms make provision for an appeal, none would be allowed. A similar conclusion was reached in Cullins v. Williams, 156 Ky., 57.

It is true that in those cases no penal punishment was imposed, but this circumstance does not detract from the authority of those cases as controlling precedents in this one. In both of them the Legislative purpose, to invest the county courts with full and final authority over the administration and execution of the system of laws relating to dependent, neglected and delinquent children, was fully recognized.

For the reasons stated, we think the Campbell Circuit Court had no jurisdiction of the appeal, and therefore a writ of prohibition will issue directing the judge of the Campbell Circuit Court to dismiss the appeal for want of jurisdiction.